# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>vs.<br><br>**Arturo Albarras Altunar,**<br>      *Defendant.* | **DOCKET NO. 3:25MJ00176** |

## MOTION FOR RECONSIDERATION AND BRIEF REGARDING PROCEEDINGS UNDER 18 U.S.C. § 3142

### I. INTRODUCTION

Mr. Altunar, by and through counsel, hereby moves this Court for reconsideration of its finding that the Government is entitled to a detention hearing based upon 18 U.S.C. § 3142(f)(2). The Government has not and cannot prove by a preponderance of the evidence that this case "involves . . . a serious risk that [he] will flee." 18 U.S.C. § 3142(f)(2)(A). Mr. Altunar asks the Court to rule on this threshold issue either prior to the detention hearing or at the close of the Government's proof. He further moves for immediate release.

### II. PROCEDURAL HISTORY

The Government charged Mr. Altunar by criminal complaint on July 3, 2025, with a violation of 18 U.S.C. § 1326(a), reentry of a removed alien. Mr. Altunar appeared in court on July 8, 2025, for initial appearance. The Government moved to detain Mr. Altunar pursuant to 18 U.S.C. § 3142(f)(2), alleging that Mr. Altunar posed a serious risk of flight. In support, it offered the following reasons: the existence of an immigration detainer, Mr. Altunar's ties to another country, an incentive to avoid punishment, prior contact with immigration authorities, and the use of a false name and/or false documents to secure employment. It did not put on evidence.

Through counsel, Mr. Altunar objected to the Government's motion. Mr. Altunar first requested that the Court postpone the § 3142(f)(2) inquiry until such time as counsel could be adequately prepared to rebut the Government's motion through arguments and/or evidence. The Court denied that request. Counsel then objected that the Government's proffered basis was insufficient, and no detention hearing should be held. The Court overruled that objection and set the matter for a detention hearing on July 11, 2025.

### III. LEGAL AUTHORITY

#### a. Legal Basis to Hold a Detention Hearing

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). To ensure that pretrial detention would continue to be an exception, Congress limited the categories of cases eligible for pretrial detention to those listed in 18 U.S.C. § 3142(f): crimes of violence, Class A felonies, drug-trafficking offenses, offenses that involve minor victims, firearms, destructive devices, or failing to register as a sex offender. 18 U.S.C. § 3142(f)(1); *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003); *United States v. LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003) (quoting S. Rep. No. 98-225, at 20 (1984) ("[T]he requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.")). Congress excluded unlawful reentry offenses from that list. In other words, Congress determined that defendants charged with reentry of a removed alien are not detainable at all and must be released.

Because Congress excluded unlawful reentry offenses from subsection (f)(1), there is only one mechanism to even hold a detention hearing in this case: the Government must clear the evidentiary threshold under subsection (f)(2). Under subsection (f)(2), the Court performs a threshold inquiry that asks two questions:

2

1) Is there a "serious risk" that the defendant "will flee," or

2) Is there a "serious risk" the defendant will obstruct justice, threaten witnesses, or threaten jurors?

The Government is proceeding in this case solely under subsection (f)(2)(A), serious risk of flight. Such flight requires a volitional act of the defendant. *United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015) (explaining that the "district court erred in relying on the existence of an ICE detainer and the probability of Santos-Flores's immigration detention and removal from the United States" in ordering that he be detained pending trial in part because the "risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition"). "[A] 'serious risk of flight under § 3142(f)(2)(A) is a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *United States v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1138 (D. Idaho 2023). "[T]he plain import of the term 'flight" connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction." *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) (citing *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) (concluding that immigration removal does not qualify as flight because flight must involve an element of volition)).

The Court's first and most important inquiry under the Bail Reform Act is whether a detention hearing is authorized on this ground. Through this threshold inquiry, the Bail Reform Act "performs a gate-keeping function by "limit[ing] the circumstances under which [pretrial] detention may be sought to the most serious of crimes." *Salerno*, 481 U.S. at 755. "It is the government's burden to establish that it is entitled to a detention hearing by a preponderance of the evidence." *United States v. Anguah*, 2019 U.S. Dist. LEXIS 15125 at *2; 2019 WL 406144 (E.D.N.C. Jan. 31, 2019). *Accord United States v. Abrego-Garcia*, 2025 U.S. Dist. LEXIS 120687

3

at *9 (M.D. Tenn. June 22, 2025).[1] In order to clear the evidentiary threshold imposed by (f)(2)(A), the government must present "concrete information," not "mere conclusory assertions." *Unites States v. White*, 2021 U.S. Dist. LEXIS 100544, *20; 2021 WL 2155441 at *7 (M.D. Tenn. May 27, 2021). *See also United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention."). As discussed in detail in *White*, this threshold inquiry is narrower than and distinct from the inquiry at the second stage of the detention hearing itself. *White*, 2021 U.S. Dist. LEXIS at *26-32 (contrasting "flight risk" at step 1 with "risk of non-appearance" at step 2). *Accord Figueroa-Alvarez*, 681 F.Supp.3d at 1136-37. The court may—and indeed should—hear evidence subject to challenge by the defense to support or negate a finding that serious risk of flight is present. *White*, 2021 U.S. Dist. LEXIS at *30-31. This may occur at initial appearance or at the detention hearing. *Id.* "[T]he court properly considers a wide range of proof, the nature and quality of which, though, impacts the probative value and ultimate weight of the proof in the detention calculus. The court must also be mindful of the high stakes involved in the decision of whether to release or detain a person prior to conviction of the offense charged." *Abrego-Garcia,* 2025 U.S. Dist. LEXIS 120687 at *11. The court may hear evidence or proffers from either the government or the defense. *Id.* "[A] court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue." *White*, 2021 U.S. Dist. LEXIS at *18.

---

[1] The District Court denied the Government's Motion to Stay the Magistrate Judge's Order at *United States v. Abrego Garcia*, U.S. Dist. LEXIS 120593 at *8 (M.D. Tenn. June 25, 2025) in a ruling that endorsed the Magistrate's legal reasoning and factual findings.

4

The Government should only be able to meet its burden in "extreme and unusual cases."[2] In the majority of cases, the Government will not be able to demonstrate that a defendant's risk of flight is beyond the ordinary risk of flight seen in everyday cases, and a detention hearing will not be authorized. If a detention hearing is not authorized, then the Court must immediately release the defendant on their personal recognizance or on such conditions as the Court determines are the least restrictive necessary.

### b. Relevance of Active Immigration Case to Legal Standard

Aside from preliminary detention pending a bail hearing under 18 U.S.C. § 3142(d)(2),[3] the Bail Reform Act is completely silent with respect to immigration detainers. *See, e.g., United States v. Ailon-Ailon,* 875 F.3d 1334, 1338 (10th Cir. 2017) ("Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings."). Courts have held that "evidence of an ICE detainer alone does not merit detention under the Bail Reform Act," *United States v. Tapia,* 924 F. Supp. 2d 1093, 1097 (D.S.D. 2013), and have released defendants on conditions despite the existence of an ICE detainer. "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *United States v. Adomako,* 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001); *United States v. Marinez-Patino,* 2011 WL 902466, *6 (N.D. Ill. Mar. 14, 2011). Indeed, "the court would violate the Bail Reform Act if it detained defendant based only on the fact he is an alien and ICE has filed a detainer." *United States v. Urizar Lopez,* 2018 WL 3043328, *2 (S.D. Iowa June 19, 2018). *See also Ailon-Ailon*, 875 F.3d at 1337 ("We agree ... that a risk of involuntary removal does not establish a 'serious risk that the defendant will flee' upon which pretrial detention may be based.") (collecting cases); *United States v. Suastegui*, 2018 WL 3715765 at *2 (W.D.Va

---

[2] *See Bail Reform Act of 1983: Rep. of the Comm. On the Judiciary*, S. Rep. 98-225 (1983) (noting the First Circuit's decision in *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) accurately captures how often the serious flight risk standard under (f)(2)(A) gets satisfied: in "extreme and unusual" cases).

[3] Because Mr. Altunar is already subject to an immigration detainer, this provision is irrelevant to the instant case.

5

2018) ("[T]he risk he will be involuntarily removed from the United States by ICE officials, without more, does not permit pretrial detention under § 3142(e)(1)"). At least one Court of Appeals has reversed a detention order predicated on an ICE detainer, noting that "the government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departure control order if it believes that his removal before trial would be contrary to public interest." *United States v. Castro-Inzunza,* 2012 WL 6622075, *1 (9th Cir. July 23, 2012) (unpublished). And some courts have found that an immigration detainer "obviates any serious risk of flight." *Abrego-Garcia,* 2025 U.S. Dist. LEXIS 120687 at *48 (collecting cases).

The District Court in *Figueroa-Alvarez* reviewed existing caselaw and provided the following list of factors to analyze the question of serious risk of flight in a case where the defendant is subject to an immigration detainer: "(i) incentives to flee; (ii) ability to flee; (iii) ties to the jurisdiction and the United States; and (iv) reliability and trustworthiness of the defendant." *Figueroa-Alvarez,* 681 F.Supp.3d at 1140. These will be discussed in connection with the inadequacies of the Government's arguments in the following section.

### IV. INSUFFICIENCY OF GOVERNMENT'S PROFFER

None of the grounds proffered by the Government at the initial appearance suffice to meet its burden of establishing a serious risk of flight justifying holding a detention hearing.

<u>The existence of an immigration detainer</u>: As discussed above, courts have either found the existence of a detainer to be irrelevant to the analysis under subsection (f)(2)(A) because it does not implicate the defendant's likelihood of fleeing of his own volition or have found that the detainer weighs *against* a finding that the defendant will flee.

<u>Ties to another country</u>: The Government asserts that because Mr. Altunar was born in another country, he presently has ties to that country. It provided no facts to show the strength, depth, or recency of those ties, nor any evidence to suggest that those ties outweigh his ties to *this* country and *this* jurisdiction. The question of ties to a community is nuanced and "involves multiple factors: (i) length of residence in the jurisdiction and the United States; (ii) presence of family members in the jurisdiction and the United States; (iii) community ties to the jurisdiction

6

and the United States; and (iv) ability to legitimately be employed and earn income in the United States." *Figueroa-Alvarez*, 681 F.Supp.3d at 1142.

As demonstrated in the photograph below, Mr. Altunar's ties are to the United States and within this District.



Mr. Altunar wife of 22 years resides in the District. They have three children ages 20, 11, and 6. The two younger children go to public schools within the District, see doctors here, and call our District home. Additionally, their one-year-old grandchild resides with them. Beyond his family, Mr. Altunar has friends and a community within the District.

<u>Prior contact with immigration authorities</u>: The Government argued that Mr. Altunar's prior contact with immigration authorities some nine years ago is suggestive of a risk of flight. In addition to being inherent in any § 1326 case, the Government's argument is unpersuasive. Prior reentries are simply not predictive of flight. *See Figueroa-Alvarez,* 681 F.Supp.3d at 1144 (as to trustworthiness of the defendant, "illegal reentries simultaneously demonstrate the alien defendant's disregard for court orders and the criminal law *and* his or her strong desire to remain

7

in the United States. Indeed, the very act of illegally reentering the United States . . . demonstrates a firm resolve to reside in this country."); *White,* 2021 U.S. Dist. LEXIS 100544 at *35 (concluding that "disregard for the law" has little relation to risk of intentional flight).

Incentive to avoid punishment: This incentive exists in every criminal case to some degree—but the degree in this case is a low one. The statutory maximum is two years, and the anticipated base offense level is merely 8. *See generally Figueroa-Alvarez*, 681 F.Supp.3d at 1141-42 (considering the length of the guidelines term of imprisonment in relation to the incentive to flee factor). *See also White,* 2021 U.S. Dist. LEXIS 100544 at *35 (finding that federal crimes generally carry serious penalties, yet release is the default under the Bail Reform Act.); *Abrego-Garcia*, 2025 U.S. Dist. LEXIS 120687 at *45 (concluding that a potential sentence of 15 months or up to 64 months are not "so extraordinary as to compel finding that this case involves a serious risk of flight").

The likely low guideline term of imprisonment in this case affects incentives in another way that must be named: Should Mr. Altunar be detained pending trial, he has little incentive to conduct a thorough and searching review of the legal and factual issues in his case. Such a review and any resulting litigation would cause him to be detained in pretrial custody longer than he would serve if he simply waived his rights and entered a guilty plea.

Use of a false name and/or false documents to secure employment: The Government argued that Mr. Altunar's alleged use of a false identity to secure employment is evidence that he has the ability to flee. *See Figueroa-Alvarez*, 681 F.Supp.3d at 1146. This argument is unpersuasive for several reasons. First, any fraudulent identity documents linked to Mr. Altunar have been seized by law enforcement. There is no evidence to show that Mr. Altunar has the ability to obtain other documents. Second, the context of this case is significant. The arrest of Mr. Altunar is part of a larger investigation into employment practices at Buckeye Fire Equipment Company. This is according to the complaint and to official statements by ICE

officials.[4] In this particular factual scenario, the alleged use of a fake name or documents to secure employment does not indicate an intention to hide or deceive. To the contrary, the theory of the Government's investigation is that the employer was complicit in, if not actively encouraging, this conduct. Any negative inferences to be drawn from this allegation are further dispelled where Mr. Altunar provided his true legal name to law enforcement upon post-*Miranda* inquiry and explained the circumstances by which he came into possession of those documents. He did not rely on a false identity to evade arrest but instead was cooperative with the agents.

## V. EVIDENCE REBUTTING SERIOUS RISK OF FLIGHT

The Government's arguments in support of a finding of serious risk of flight almost entirely overlap with factors inherent to any prosecution for reentry of a removed alien. This flies in the face of Congressional intention *not* to include these charges among those where detention is most warranted—and it flies in the face of empirical evidence about the risks posed by these cases. In the Western District of North Carolina, of the 959 people released in the fiscal year ending in September 2024, only 3 failed to appear.[5] In the federal system, immigration cases have the lowest violation rate of *any* charges, with a failure to appear rate of *less than one percent*.

---

[4] Cassidy Johncox *et al*, *At Leat 30 Detained by ICE in Kings Mountain Business Investigation with More Detentions Possible, Officials Say*, WBTV Charlotte July 9, 2025, https://www.msn.com/en-us/news/us/at-least-30-detained-by-ice-in-kings-mountain-business-investigation-with-more-detentions-possible-officials-say/ar-AA1HtYgU?ocid=BingNewsVerp.

[5] Pretrial Services Violations Summary Report, *available at* https://www.uscourts.gov/sites/default/files/2025-01/jb_h15_0930.2024.pdf.

**TABLE 7**
Defendants released pretrial with cases disposed in federal district courts, by type of release violation and most serious offense, FYs 2011–18

| Most serious offense | Number of released defendants | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| All offenses | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| Violent | 7,228 | 26.9% | 1.1% | 25.0% | 2.3% | 17.1% |
| Property | 73,197 | 13.8% | 0.9% | 12.1% | 1.8% | 6.9% |
|   Fraudulent | 60,529 | 13.3 | 0.8 | 11.7 | 1.9 | 6.6 |
|   Other | 12,668 | 16.0 | 1.0 | 14.3 | 1.6 | 8.4 |
| Drug | 75,249 | 27.9% | 1.5% | 25.8% | 3.0% | 15.7% |
|   Trafficking | 56,281 | 28.6 | 1.5 | 26.3 | 3.2 | 16.4 |
|   Possession/other | 18,968 | 25.9 | 1.5 | 24.0 | 2.4 | 13.8 |
| Public order | 33,485 | 12.7% | 0.7% | 11.6% | 1.1% | 6.3% |
|   Regulatory | 6,384 | 10.4 | 0.8 | 9.4 | 1.0 | 5.3 |
|   Other | 27,101 | 13.3 | 0.7 | 12.2 | 1.1 | 6.5 |
| Weapons | 15,516 | 35.2% | 1.2% | 32.3% | 4.7% | 21.5% |
| Immigration | 35,454 | 7.4% | 0.6% | 6.8% | 0.6% | 4.8% |

Exhibit 1. That is, of the 35,454 people charged with an immigration offense who were released, only 212 of them failed to appear for court—and this statistic is overinclusive for the Court's current inquiry as failure to appear at court includes a broader set of circumstances than willfully fleeing the jurisdiction, as discussed above. To say that there is a serious risk of flight when there is a 0.6% risk of nonappearance is an absurdity. Particularly in Mr. Altunar's case, he has deep ties to the community, a family who relies upon him, and a history of working hard.

## V. CONCLUSION

In sum, none of the factors identified by the Government prove there is a serious risk that Mr. Altunar will intentionally flee the jurisdiction. The Court has the authority and the duty to conduct a hearing on this threshold question at the scheduled detention hearing, and the Court should uphold the stringent standards of § 3142(f)(2)(A) by denying the Government's request for a detention hearing. Mr. Altunar should be immediately released.

Respectfully submitted,

/s/ John G. Baker
John G. Baker
PA Bar No. 80218

                          Federal Public Defender
Federal Public Defender's Office
129 West Trade Street
Charlotte, NC 28202
Phone: (704) 374-0720
Fax: (704) 374-0722
Email: john_baker@fd.org

ARTIFICIAL INTELLIGENCE CERTIFICATION

I, John G. Baker, hereby certify that:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/ John G. Baker
John G. Baker